UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

Hasel et al.,

Plaintiffs,

v.

Danville Materials Inc., et al.,

Defendants.

Civil No. 01-2009 (JMR/FLN)

**REPORT AND RECOMMENDATION**

Ronald Brown & Scott Marks for Plaintiffs.
Joseph Anthony & Courtland Merrill for Defendants.

**THIS MATTER** came before the undersigned United States Magistrate Judge on November 22, 2002 on Plaintiffs' Motion for Partial Summary Judgement of Infringement of U.S. Patent Nos. 6,315,567 and 5,944,527 [#45]. The matter was referred to the undersigned for Report and Recommendation under 28 U.S.C. § 636 and Local Rule 72.1(c). For the reasons which follow, this Court recommends that Plaintiffs' Motion be denied.

## I. BACKGROUND

Plaintiff Robert Hasel is a dentist with inventions in the area of tooth restoration. (Pls. Mem., 1). Plaintiffs allege that Dr. Hasel created a new restorative product category, "flowable composites," that gives dentists the ability to fill cavities with a greater level of precision and effectiveness than with conventional tooth filing materials. (Id.). Dr. Hasel obtained three patents on his inventions, each entitled "Methods for Restoring a Tooth": U.S. Patent No. 5,547,379 ('379 patent); U.S. Patent No. 5,944,527 ('527 patent); and U.S. Patent No. 6,315,567 ('567 patent). (Id.). The patents are owned by plaintiff ABCO Research, LLC, a company jointly owned by Dr. Hasel

FILED JAN 2
RICHARD D. SLETTEN, CLERK
JUDGMENT ENTD
DEPUTY CLERK

and Andrew Grossman, which holds, enforces, licenses, and profits from patents. (Id.). The Plaintiffs do not manufacturer or distribute any dental products covered by the '379, '527, or '567 patents. (Defs. Mem. in Opp'n, 6).

Defendants Danville Materials, Inc. and Danville Manufacturing, Inc. (collectively, "Danville") are small corporations that manufacture and sell dental products and equipment, including four flowable composite products: StarFlow, StarFlow PV; StarFill 2B; and Aria. (Id. at 2). At the time that the Defendants were founded, they sold dental air abrasion tools that make small, precision cavity preparations. (Id. at 2-3). A dental lecturer, Dr. Raymond Bertolotti, recommended the use of Defendants' products with composite dental restorations. (Id. at 3). Defendants and Dr. Bertolotti eventually agreed upon a joint venture to market a line of composite dental restorative products compatible with Defendants' line of abrasion air tools. (Id.). The Defendants selected a composite dental restoration product sold by a German manufacturer, S&C Polymer Silicon Composite Spezialitaten GmbH ("S&C Polymer"). (Id. at 4). Defendants allege that they selected StarFlow from S&C Polymer because of its ability to flow or run after application. (Id.).

The parties disagree on the origins of flowable composites and the Plaintiffs' patents. Plaintiffs allege that, after experimentation, Dr. Hasel developed a flowable composite that was superior to the conventional paste composites that were applied with a spatula and were traditionally used to fill cavities. (Pls. Mem., 2-3). This system and composition resulted in the award of the three patents-in-suit. (Id. at 3). According to Plaintiffs, the first flowable composite to enter the market was called Revolution in 1994. (Id. at 4). Revolution was marketed by E&D Dental Products Inc., ("E&D") later acquired by Kerr Corporation. (Id.).

In contrast, the Defendants allege that the patents are invalid over prior art, that Dr. Hasel was not the only or primary inventor of flowable composites, and that the patents are invalid because of inequitable conduct. Defendants allege that prior to Defendants' endeavor to market and sell flowable composites, numerous dental companies sold restorative dental composites which could be applied through a needle on a syringe. (Defs. Mem. at 4-6). Defendants claim that Dr. Takao Fusayama, a Japanese dentist and lecturer, first introduced the idea of flowable composites in the 1970's. (Id. at 5). Defendants also allege that numerous other companies sold restorative composites prior to Defendants' endeavor in 1995, including: Jeneric/Pentron, Inc.; Ultradent Products Inc.; and E&D. (Id. at 5-6).

The Defendants also contend that the flowable composite restorative was not developed by Dr. Hasel, but rather by Thomas Bryan, a 3M research chemist. (Id. at 7). While at 3M Mr. Bryan worked with silicones, dental impression materials, the curing of polymers with visible light, and the direct application of restorative dental composites through a needle using a syringe. (Id.). Mr. Bryan was named the inventor on at least a dozen patents, including U.S. Patent No. 4,957,441 which discloses a technique of serially polymerizing photocurable composite restorations in layers of 2 millimeters. (Id.). According to Defendants, Dr. Hasel contacted Mr. Bryan regarding collaboration on the development of dental restorative composites. (Id.). Dr. Hasel characterized Mr. Bryan's role as "simply providing help in mixing materials." (Hasel Dep., 50). In Dr. Hasel's deposition he admitted that in 1993 he began using composite dental restorative products, made by Mr. Bryan, on his patients. (Defs. Mem., 8). Dr. Hasel admitted he did not provide Mr. Bryan with any input regarding the formulaic make-up of the composite dental restoratives, rather he only provided clinical feedback from the use of the products in his patients. (Id.).

Mr. Bryan developed a composite dental restorative product in early to mid 1993, designated it as V-34 and referred to the product as Vivo-Lux Restore. (Id.). Vivo-Lux Restore included a polymerizable liquid resin portion and an inorganic filler portion that constituted less than 70% of the total weight of the material. (Bryan Deposition, 112-14, 116-117). In 1993, Dr. Hasel and Mr. Bryan together approached E&D, a New Jersey dental products marketer, to market Vivo-Lux Restore. (Defs. Mem., 8). E&D recommended using Scientific Pharmaceuticals to manufacture the product and Bryan sent a sample and the formula to Scientific Pharmaceutical's principal, Dr. Jan Orlowski, for evaluation. (Id.). Dr. Orlowski analyzed Vivo-Lux Restore and determined it was unsuitable for commercial use. (Id. at 9).

In August 1993, Dr. Hasel and Mr. Bryan had a disagreement over the profits of Vivo-Lux Restore and Dr. Hasel sent a letter to Mr. Bryan ending, what he termed, "their implied partnership." (Id.). The Defendants contend that Dr. Hasel then entered into an agreement with E&D to assist in the development of E&D's new product Revolution. (Id.). Revolution was supplied to E&D by Scientific Pharmaceuticals and was virtually identical to the formulation described in the 1983 FDA application for Scientific Pharmaceuticals' Cu-Ray Match, with minor changes. (Id.).

Later Dr. Hasel approached E&D expressing a desire to patent Revolution. (Id.). According to Defendants, E&D stated that they would not pay for Dr. Hasel's patent pursuit because he was not the creator of Revolution, rather, it was invented by Scientific Pharmaceuticals. (Id.). E&D also did not believe that there was an underlying idea for Revolution that could be patented. (Id.).

Plaintiffs assert that each of the Defendants' four products infringe on the Plaintiffs' patents-in-suit. (Pls. Mem., 1, 4-5). This summary judgment motion, however, only concerns one of

Defendants' products, StarFlow, and the motion is limited to the '567 and '527 patents.[1] The Plaintiffs are moving for summary judgment as follows: (1) Defendants' StarFlow product infringes claim 17 of the '567 patent; (2) Defendants' StarFlow product infringes claims 14, 15 and 33 of the '527 patent; (3) Defendants have directly infringed claim 1 of the '527 patent; and (4) Defendants have induced infringement of claim 1 of the '527 patent. Plaintiffs allege that StarFlow is the type of product contemplated by Dr. Hasel's patents because it a flowable composite used to restore teeth by application to a prepared cavity site through a needle-tipped syringe. (Id. at 4-5; Defs. Mem., 4). According to Plaintiffs, it has an inorganic filler portion and a liquid resin portion, and exhibits the same characteristics related to viscosity as disclosed in Dr. Hasel's patents. (Pls. Mem., 4). Defendants argue that their products do not meet the claim limitations of the patents and further defend the motion on the grounds that Plaintiffs' patents-in-suit are invalid. (Defs. Mem., 1-2).

## II. STANDARD OF REVIEW

The Supreme Court has held that summary judgment is to be used as a tool to isolate and dispose of claims or defenses that are either factually unsupported or based on undisputed facts. See Celotex Corp. v. Catrett, 477 U.S. 317, 323-27 (1986). Therefore, summary judgement is appropriate when the moving party establishes based on the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, that there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. See

[1] This Court granted Plaintiffs' Motion for Leave to Withdraw Their Claim of Infringement of U.S. Patent #5,547,379 and to Dismiss Defendant's Declaratory Judgment Counterclaims Relating to U.S. Patent #5,547,379 [#42] on November 18, 2002. Thus, the '379 patent is no longer a part of this litigation.

Fed. R. Civ. P. 56(c); Celotex, 477 U.S. at 322-23. When considering a motion for summary judgement, a court should construe all evidence in favor of the non-moving party. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986). Thus, summary judgment is appropriate when the court has viewed the facts and the inferences drawn from those facts, in a light most favorable to the non-moving party, and found no triable issue. See Southwall Technologies, Inc. v. Cardinal IG Co., 54 F.3d 1570, 1575 (Fed. Cir. 1995). For these purposes, a disputed fact is "material" if it must inevitably be resolved and the resolution will determine the outcome of the case; while a dispute is "genuine" if the evidence is such that a reasonable jury could return a verdict for the non-moving party. See Anderson, 477 U.S. at 248. The same summary judgment standard in Fed. R. Civ. P. 56 is to be applied in motions involving patent claims as it is applied in other actions. See Avia Group Int'l, Inc., v. L.A. Gear Calif., Inc., 853 F.2d 1557, 1661 (Fed. Cir. 1988); Union Carbide Corp. v. American Can Co., 724 F.2d 1567, 1571 (Fed. Cir. 1984).

Fed. R. Civ. P. 56(e) makes clear that once the moving party files a properly supported motion, the burden shifts to the non-moving party to demonstrate the existence of a genuine dispute. In sustaining that burden, an adverse party may not "rest upon the mere allegations or denials of his pleading, but . . . must set forth specific facts showing that there is a genuine issue for trial." Anderson, 477 U.S. at 249-56 (noting that if the evidence submitted by the non-moving party is merely colorable or is not significantly probative, summary judgment may be granted); see also Fed. R. Civ. P 56(e). The moving party is entitled to summary judgment where the non-moving party has failed to "establish the existence of an element essential to that party's case and on which that party will bear the burden of proof at trial." Celotex Corp., 477 U.S. at 322. No genuine issue of fact

exists in such a case because "a complete failure of proof concerning an essential element of the non-moving party's case necessarily renders all other facts immaterial." Celotex Corp., 477 U.S. at 323.

## III. LEGAL ANALYSIS

Patent infringement occurs when a device, that is literally covered by the claims of an existing patent, or is equivalent to the claimed subject matter, is made, used, or sold, without the authorization of the patent holder, during the term of the patent. See 35 U.S.C. § 271; Multiform Desiccants, Inc. v. Medzam, Ltd., 133 F.3d 1473, 1476 (Fed. Cir. 1998). Whether an accused product infringes a patent claim involves a two step analysis in which the first step is determining the meaning and scope of the patent claims asserted to be infringed and the second step is comparing the properly construed claims to the device accused of infringing. See Markman v. Westview Instruments, Inc., 52 F.3d 967, 976 (Fed. Cir. 1995), aff'd, 517 U.S. 370 (1996).

The construction of a patent claim including the terms of art within the claim is a matter of law within the purview of the Court. See Markman v. Westview Instruments Inc. ("Markman II"), 517 U.S. 370, 391 (1996); see also Cybor Corp. v. FAS Technologies, Inc., 138 F.3d 1448, 1456 (Fed. Cir. 1998). The construction of patent claims requires an examination of the intrinsic record evidence, which includes: (1) the patent itself, including the claims; (2) the specification; and (3) the prosecution history. See Burke, Inc. v. Bruno Indep. Living Aids, Inc., 183 F.3d 1334, 1339 (Fed. Cir. 1999); Spectrum Int'l Inc. v. Sterilite Corp., 164 F.3d 1372, 1378 (Fed. Cir. 1998). Additionally, "[t]he court may receive extrinsic evidence to educate itself about the invention and the relevant technology, but the court may not use extrinsic evidence to arrive at a claim construction that is clearly at odds with the construction mandated by the intrinsic evidence." Karlin Tech., Inc. v. Surgical Dynamics, Inc., 177 F.3d 968, 971 (Fed. Cir. 1999). The terms of a claim should be

given their ordinary meaning unless the inventor intended that the terms should be otherwise construed. (Id.). Thus, a patentee may select his or her own meaning for terms, but must do so by clearly setting forth an explicit definition for the claim term. See Johnson Worldwide Associates, Inc. v. Zebco Corp., 175 F.3d 985, 990 (Fed. Cir. 1999).

Generally, to show literal infringement, a patentee must prove that "every limitation recited in the claim is found in the accused device, i.e., when the properly construed claim reads on the accused device exactly." Cole v. Kimberly-Clark Corp., 102 F.3d 524, 532 (Fed. Cir. 1996); see also Laitram Corp. v. Rexnord, Inc., 939 F.2d 1533, 1539 (Fed. Cir. 1991) ("the failure to meet a single limitation is sufficient to negate infringement of the claim."). The question of whether the subject matter of a patent claim fails to meet the written description requirement is a question of fact. See All Dental Prodx, LLC v. Advantage Dental Prod. Inc., 309 F.3d 774, 778 (Fed. Cir. 2002). The standard for proving infringement is by a preponderance of the evidence. See Streamfeeder, LLC v. Sure-Feed Systems, Inc., 175 F.3d 974, 981 (Fed. Cir. 1999); San Huan New Materials High Tech., Inc. v. Int'l Trade Comm'n, 161 F.3d 1347, 1357 (Fed. Cir. 1998). Thus, summary judgment of no literal infringement is proper in a patent infringement suit when, construing the facts in a manner most favorable to the nonmovant, no reasonable jury could find that the accused system meets every limitation recited in the properly construed claims. See Catalina Mktg Int'l, Inc. v. Coolsavings.com, Inc., 289 F.3d 801, 812 (Fed. Cir. 2002).

**A. Claims 17 of the '567 Patent and 33 of the '567 Patent**

The Plaintiffs contend that StarFlow literally infringes claim 17 of the '567 Patent and claim 33 of the '527 Patent because they allege that the Defendants have admitted that StarFlow meets all of the limitations in these claims. (Pls. mem. 6-13, 21-24). Claim 17 of the '567 patent reads:

> A system for restoring a Class I though Class V dental cavity comprising: a syringe type applicator having a lumen; and a thixotropic restorative composition in said applicator for application to the hollow of a prepared said cavity through said lumen, wherein the thixotropic restorative composition has a viscosity sufficiently low to allow said thixotropic restorative composition to pass through said lumen when application pressure is applied and sufficiently high to prevent said thixotropic restorative composition from running after application to said hollow, the thixotropic composition comprising a curable liquid resin portion and an inorganic filler portion.

The limitation in claim 33 provides:

> A system for restoring a tooth comprising: an applicator including a syringe and a needle with a lumen, wherein said needle is a 16 gauge to 25 gauge needle; and a thixotropic restorative composition in the applicator for application to the hollow of a tooth, said composition being sufficiently thixotropic to exhibit a viscosity sufficiently low to pass through said lumen when exposed to an application pressure and sufficiently high to prevent said restorative composition from running.

As noted earlier, in an infringement analysis, we must construe the claims that are alleged to be infringed, and then compare those properly construed claims to the allegedly infringing device. The Defendants dispute whether or not StarFlow is thixotropic under the definitions in both claims 17 and 33. We do not need to go beyond the intrinsic evidence in the patent claim to define the term thixotropic. Both claims define the term as a restorative composition with: (1) a viscosity low enough to pass through a lumen when pressure is applied; but also (2) a viscosity high enough so that the composition doesn't run. Defendants have admitted that StarFlow's viscosity is low enough for the definition of thixotropic. (Pls. mem. 11; Defs. Resp. & Objections to Pls. Second Set of Req. for Admis. Nos. 5 and 6). Thus, the specific issue is whether or not StarFlow runs after application to the tooth.

The parties dispute the definition of the claim limitation that the flowable composite will not

run. The Defendants assert that "will not run" should be interpreted to mean that when applied, the composite clings to the vertical surface of the hollow in the tooth (in other words, it clings to the sides of the hollow and doesn't flow into the bottom of the hollow). (Defs. Mem. 23). Defendants contend that StarFlow doesn't infringe claim 17 and 33 because StarFlow does in fact "run" by flowing into the bottom hollow of the tooth. (Id.). In contrast, Plaintiffs, pointing to the patent specifications, contend that " will not run" means that the composite does not flow or drip out of the hollow. (Pls. Reply Mem. 5). Plaintiffs are correct that the specification clearly defines, "will not run" as will not "flow or drip out of the hollow under gravity. See '527 Patent, Col. 3, ln. 35-36; and '567 Patent, Col. 3, ln. 40-41. We do not need to look beyond the intrinsic evidence in the specification to define the claim limitation "will not run."

Nonetheless, we find that there is a genuine issue of material fact as to whether or not StarFlow "will not run" when applied to the hollow of a tooth. Having determined the definition of "will not run" the next step in the infringement analysis is to compare the claim limitation to the accused product. Defendants have stated that they selected StarFlow for its low viscosity and ability to run after application because composite restoratives with low viscosity are preferable for use with Defendants' air abrasion tools. (Defs. Mem. 24). The promotional video made by Defendants and the video made by Dr. Hasel using StarFlow, both leave open a question of fact of whether or not StarFlow runs out of the hollow of the tooth. See Brown Declaration, Exhibit G; Hasel Declaration, Exhibit B. A reasonable jury could determine that StarFlow does in fact run and decide this fact in favor of the Defendants, the non-moving party. Plaintiffs have failed to establish that StarFlow meets the Patent definition of a thixotropic composition. Thus, whether there is literal infringement of claim 17 and claim 33 depends on a genuine issue of material fact for the jury to determine. Since

patent infringement is a question of fact, a trial court may not resolve infringement on summary judgment unless no genuine factual issue remains. See Electro Scientific Industries, Inc. v. Dynamic Details, Inc., 307 F.3d 1343, 1347 (Fed. Cir. 2002). Consequently, this Court recommends that the Plaintiffs' Motion for Summary Judgment on claim 17 of the '567 patent and claim 33 of the '527[2], be denied.

### B. Claims 1, 14 and 15 of the '527 Patent

The Defendants contend that the '527 patent is invalid because the composition described in the patent was anticipated by prior art. The Defendants further contend that the patent is also invalid because of Dr. Hasel's inequitable conduct in not disclosing Mr. Bryan as a co-inventor. In contrast, the Plaintiffs contend that this Court should not address the issue of the invalidity because that issue is separate from the infringement issue brought in the Plaintiffs' Summary Judgement Motion. The Plaintiffs' position is that this Court must disregard the issue of invalidity when deciding the partial motion for summary judgment of infringement.

The Plaintiffs are correct that claims of infringement and validity are analytically separate issues. See Medtronic, Inc. v. Cardiac Pacemakers, Inc., 721 F.2d 1563, 1582 (Fed. Cir. 1983); Simmons Fastener Corp. v. Ill. Tool Works, Inc., 739 F.2d 1573, 1576 (Fed. Cir. 1984). The issue of whether a patent is infringed is capable of determination without regard to its validity. See Medtronic, 721 F.2d at 1582. Nonetheless, an invalid claim cannot give rise to liability for infringement. See id. The Federal Circuit has held that it is desirable for a court to decide invalidity and infringement at the same time. See Medtronic, 721 F.2d at 1582; Simmons, 739 F.2d at 1576.

---

[2] We will not grant summary judgement on claim 33 of the '527 patent for the additional reason that there is a genuine issue of material fact of whether or not the '527 patent is invalid. See infra.

Because the claims of a patent measure the invention at issue, the claims must be interpreted and given the same meaning for both validity and infringement analyses. See Amazon.com, Inc. v. Barnesandnoble.com, Inc., 239 F.3d 1343, 1351 (Fed. Cir. 2001); Witco Chem. Corp. v. Peachtree Doors, Inc., 787 F.2d 1545, 1549 (Fed. 1986) (holding it inappropriate to have one jury decide the issue of validity and another infringement because issues of infringement and validity are indistinguishably woven together). Consequently, because both validity and infringement involve construction of a claim, and the construction must be the same in determining both issues, the Federal Circuit directs courts to resolve both questions at the same time. See Medtronic, 721 F.2d at 1582; Simmons, 739 F.2d at 1576.

The Defendants defend the summary judgment motion for infringement on the basis that the patents are invalid. They contend that the products Pentra-seal II, Ultra-Blend, and Status are restorative dental composites that anticipate claims in the Plaintiffs' patents. (Def. Mem., 28). A challenger to a patent must prove invalidity by clear and convincing evidence. See Tate Access Floors, Inc. v. Interface Architectural Res., 279 F.3d 1357, 1367 (Fed. Cir. 2002). A patent is presumed to be valid, and the burden of proving invalidity of the patent rests on the party asserting such invalidity. See 35 U.S.C. § 282. A person is not entitled to a patent if the product was in public use or on sale more than one year prior to the date of the application for the patent. See 35 U.S.C. 102(b); Schumer v. Lab. Computer Sys., Inc., 308 F.3d 1304, 1315 (Fed. Cir. 2002). The party asserting invalidity must prove that every limitation of the patent's asserted claims were contained, either expressly or inherently, in a single prior art reference. See Union Carbide Chem. & Plastics Tech. Corp. v. Shell Oil Co., 308 F.3d 1167 (Fed. Cir. 2002) (citing Celeritas Techs., Ltd. v. Rockwell Int'l Corp., 150 F.3d 1354, 1360 (Fed. Cir. 1998)). An accused infringer must demonstrate

by clear and convincing evidence that there was a definite sale or offer to sell more than one year before the application for the patent and that the product sold or offered for sale anticipated the claimed invention or rendered it obvious. See Minnesota Min. & Mfg. Co. v. Chemque, Inc., 303 F.3d 1294, 1301 (Fed. Cir. 2002). A determination that a product was placed on sale prior to the critical date is a conclusion of law based on underlying findings of fact. See id.

The admissions and deposition testimony of the Defendants clearly suggest that StarFlow meets the elements of claims 1, 14 and 15 of the '527 patent. Such a finding, however, doesn't entitle the Plaintiffs to judgement on these claims. Granting Plaintiffs' Summary Judgement Motion on these claims would only take away the issue of infringement for trial. Regardless of whether the Defendants have infringed these claims, there remains the significant issue of the validity of the patent and whether or not the claims were anticipated by prior art. Because the Defendants cannot be held liable for infringing an invalid patent, Plaintiffs are not entitled to any judgment for claims 1, 14 and 15 if the patent turns out to be invalid. Furthermore, the issues of infringement and invalidity should be determined at the same time in order to give the patent claims the same construction. Therefore, we conclude that the Motion for Partial Summary Judgment on infringement of claims 1, 14, and 15 should be denied.

## IV. RECOMMENDATION

Based upon all the files, records and proceedings herein, **IT IS HEREBY RECOMMENDED** that Plaintiffs' Motion for partial Summary Judgement of Infringement of U.S. Patent Nos. 6,315,567 and 5,944,527 [#45] be **DENIED**.

Dated: JAN 2, 2003

Franklin L. Noel
United States Magistrate Judge

Pursuant to Local Rule 72.1(c)(2), any party may object to this Report and Recommendation by filing with the Clerk of Court and serving on all parties, within ten days of service of this Report and Recommendation, written objections which specifically identify the portions of the proposed findings, recommendations or report to which objection is being made, and a brief in support thereof. A party may respond to the objecting party's brief within ten days after service of the objections. All briefs filed under this rule shall be limited to ten pages. A judge shall make a de novo determination of those portions to which objection is made.

This Report and Recommendation does not constitute an order or judgment of the District Court, and it is therefore not appealable to the Circuit Court of Appeals.