UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

ROBERT W. HASEL, and
ABCO RESEARCH, LLC,

CIVIL NO. 01-2009 (JMR/JSM)

Plaintiffs,

v.

ORDER

DANVILLE MATERIALS, INC., and
DANVILLE MANUFACTURING, INC.,

Defendants.

JANIE S. MAYERON, United States Magistrate Judge

This matter came on for hearing before the undersigned on March 20, 2003 upon plaintiffs' Motion for Rule 11 Sanctions. [Docket No. 33]. This Order addresses that Motion. Ronald J. Brown, Esq. and Theresa K. Hankes, Esq. appeared on behalf of plaintiffs; Cortland C. Merrill, Esq. appeared on behalf of defendants.

## I. FACTUAL BACKGROUND

Plaintiff Robert W. Hasel ("Hasel") is a licensed dentist practicing in Stillwater, Minnesota. Hasel is a part owner in plaintiff ABCO Research, LLC ("ABCO"). ABCO is the owner of U.S. Patent No. 5,547,379 ("the '379 patent"), U.S. Patent No. 5,944,527 ("the '527 patent"), and U.S. Patent No. 6,315,567 ("the '567 patent").[1] These patents pertain to flowable composites and their use in filling cavities.

---

[1] The application for the '379 patent was filed with PTO on October 6, 1994, and was issued on August 20, 1996. The '527 and '567 patents were continuations of the '379 patent. Hasel filed the application for the '527 patent on November 13, 1997, and the patent issued on August 31, 1999. On May 18, 1999, Hasel filed the application for

FILED APR 0 2 2003
RICHARD D. SLETTEN, CLERK
JUDGMENT ENTD ______
DEPUTY CLERK ______

Defendants Danville Materials, Inc. and Danville Manufacturing, Inc. are in the business of selling dental products and equipment. Defendants' line of dental products includes four flowable composite products: StarFlow, StarFlow PV, StarFill 2B, and Aria.

On or about November 1, 2001, plaintiffs initiated this suit against defendants, alleging infringement of the '379, '527 and '567 patents. On January 4, 2002, defendants answered plaintiffs' Complaint, asserting that the patents-in-suit were invalid, unenforceable, and not infringed.

On March 8, 2002, plaintiffs produced documents as required by Fed. R. Civ. P. 26(a)(1)(B). Included within this production were the file histories for the patents-in-suit, including the file history for Patent Application No. 08/08/646,707 ("the 707 application")[2] and the file history for the '527 patent. Among the documents within the file history of Patent Application No. '707 application was a Request for Withdrawal from further representation of Hasel by Hasel's former patent attorney based upon 37 C.F.R. § 10.40(c)(1)(iv), (2) and (6).[3]

---

the '567 patent and the patent issued on November 13, 2001. Defendants' Memorandum in Response to Plaintiffs' Motion for Partial Summary Judgment, Affidavit of Courtland C. Merrill ("Merrill Aff."), Ex. 20 at 10-14.

2 On May 6, 1996, shortly before the issuance of the '379 patent, plaintiff Hasel filed patent application No. 08/646,707. It was rejected by the PTO on May 7, 1997. On July 7, 1998, the application was abandoned. Merrill Aff., Ex. 3 at AD100238-239.

3 37 C.F.R. § 10.40(c)(1)(iv) states that a practitioner may request permission to withdraw . . . because the petitioner's client "[b]y other conduct renders it unreasonably difficult for the practioner to carry out the employment effectively; 37 C.F.R. § 10.40(c)(2) states "that a practitioner may request permission to withdraw . . . because [t]he practitioner's continued employment is likely to result in a violation of a Disciplinary Rule;" 37 C.F.R. § 10.40(c)(6) states "that a practitioner may request permission to withdraw . . . because [t]he practitioner believes in good faith, in a proceeding pending

Included within the file history of the '527 patent (the application was filed by Hasel on May 13, 1997) were numerous statements by Hasel regarding the state of art of composite dentistry. In essence, throughout this application and Amendment and Response filed by Hasel after the PTO rejected the application for the '527 patent, defendants claim that Hasel represented to the PTO that there were no dental composites prior to his invention that were applied directly to a tooth through a syringe and used to fill a cavity. In addition, in the Declaration of Robert W. Hasel Under 37 C.F.R. 1.132, also contained within the application for the '527 patent, Hasel represented that he was knowledgeable of the use of restorative past composites and other dental materials used by those skilled in the practice of dentistry. See Declaration of Robert W. Hasel Under 37 C.F.R. 1.132, Merrill Aff. Ex. 4 at AD100339.

On April 30, 2002, defendants moved to amend their Answer and Counterclaim, under Fed. R. Civ. P. 15, to add the affirmative defense and counterclaim of inequitable conduct. The Scheduling Order, issued by Magistrate Judge Franklin L. Noel, provided that the last day to amend pleadings was May 1, 2002. On May 14, 2002, plaintiffs stipulated to defendants' amendment to amend their answer and add the counterclaim of inequitable conduct. On or about June 5, 2002, defendants served and filed their Amended Answer and Counterclaim.

Defendants' claim for inequitable conduct as set forth in its Counterclaim is as follows:

---

before the Office, that the Office will find the existence of other good cause for withdrawal."

> Upon information and belief, plaintiff Hasel committed "inequitable conduct" upon the United States Patent and Trademark Office ("PTO") in attempting to obtain the '379, '527 and '567 patents and therefore those patents are invalid. Specifically, Hasel committed inequitable conduct upon the PTO during the entire time frame, as referenced in plaintiffs' amended complaint, wherein he sought to obtain the patents-in-suit. The place where the inequitable conduct occurred was before the PTO and its patent examiners. The substance of Hasel's inequitable conduct is found in relevant prior art, it is believed that Hasel had knowledge of yet intentionally failed to disclose to the PTO. The relevant prior art, includes, among other documents, the winter 1988-89 Healthco International catalog, the Healthco instructions for use for the "Safe-T-Ringe Status Syringeable," advertisement for "Degufill" by Degusa, advertisement for "Charisma" by Kulzer, the Liquicoat Instructions for use, and advertisement for "MFR-Merz" by Merz and Co. The aforementioned prior art anticipates Hasel's claims, specifically the prior art anticipates a restorative composite product, capable of delivery through a syringe, with a needle with a lumen 16 gauge or smaller, that is applied to tooth restoration categories I through VI, and that, upon application to the restoration is resistant to running. Plaintiff Hasel intentionally failed to disclose said prior art to the PTO during the application process for all three of the patents-in-suit.

Paragraph 8 of Counterclaim, Defendants' Amended Answer to First Amended Complaint and Defendants' Amended Counterclaim attached to Declaration of Ronald J. Brown in Support of Plaintiffs' Motion for Rule 11 Sanctions ("Brown Decl."), Ex. A.[4] In support of the defense and counterclaim of inequitable conduct, defendants attached to their motion to amend their Answer and Counterclaim, examples of relevant prior art that they claimed Hasel failed to disclose, including the winter 1988-89 Healthco International catalog, the Healthco instructions for use of the "Safe-T-Ringe Status

---

4 The Eighth Defense is virtually the same as the Counterclaim alleging inequitable conduct.

Syringeable," an advertisement for "Degufill" by Degusa, an advertisement for "Charisma" by Kulzer, the Liquicoat Instructions for use, and an advertisement for "MFR-Merz" by Merz and Co.

Plaintiffs are now before this Court alleging that defendants are in violation of Rule 11 for failure to make a pre-filing inquiry into the factual basis for their claim of inequitable conduct. To support this contention, plaintiffs cite to the 30(b)(6) Deposition of the President and General Counsel of Danville Materials, Inc., Craig Burns ("Burns") and the discovery taken by defendants to support their defense and counterclaim of inequitable conduct. The sanctions requested by plaintiffs include the dismissal of defendants' inequitable conduct defense and counterclaim and attorneys' fees.

Defendants argue that there is no basis for plaintiffs' motion. First, as a result of the documents produced by plaintiffs in connection with their Rule 26(a) disclosures and based upon defendants' knowledge of the dentistry industry, defendants contend that Hasel's statements in the '527 application and Amendment and Response that there were no dental composites prior to his invention that were applied directly to a tooth through a syringe and used to fill a cavity, were "patently false." Consequently, they assert they had sufficient evidentiary support to assert the defense and counterclaim of inequitable conduct. Second, they maintain that during the course of discovery, they uncovered additional facts to support these claims, including:

- an affidavit of Hasel they obtained shortly after they moved to add the amendment, in which he represented that he was a leader in and highly knowledgeable of the composite dentistry industry;[5]

---

[5] In this regard, Hasel had stated in an affidavit he submitted in a suit entitled Robert W. Hasel and ABCO Research, LLC., v. Kerr Corporation, that as a faculty member at the University of Minnesota, he had "access to the literature, academic

- letters to Hasel's attorneys by dental manufacturers during his prosecution of the '527 patent and prior to and during the prosecution of the '567 patent (including a letter by his current counsel, Dorsey & Whitney on behalf of Den-Mat Corporation), that advised Hasel of prior art that had not been disclosed by Hasel to the PTO in connection with these patents;

- misrepresentations to the PTO regarding the role of Thomas Bryan in the applications for the '379 and '527 patents;

- information regarding Hasel's alleged commercial use of the claimed invention over one year before he submitted the application for the '379 patent;

- Information to suggest that Hasel's prior patent counsel had withdrawn from representation of him because of Hasel's refusal to provide any information to the PTO regarding the prior commercial use of product covered by the'379 patent.[6]

Third, defendants claim that plaintiffs were not only apprised of defendants' contentions of inequitable conduct during the course of discovery, but that defendants argued, and the Court relied upon the inequitable conduct defense in connection with plaintiffs' motion for partial summary judgment that was heard by the Court on November 22, 2002, and decided on January 2, 2003.

---

research, and information regarding new product developments in the composite industry"; that as a consultant for 3M he "gave seminars on clinical techniques for composite dentistry to dentists in the U.S.A. and at 3M subsidiaries around the world"; and that the government of Taiwan had hired him to establish a dental health education program in the area of composite dentistry. Affidavit of Dr. Robert W. Hasel dated January 16, 2001, Merrill Aff. Ex. 5 at ¶¶ 6, 8, 9.

6 Defendants were not aware of the alleged misrepresentations that Hasel made regarding the role of Byran in the '379 patent or the alleged commercial use of the product more than one year before its application until they conducted discovery. Therefore, they did not allege these activities as additional bases for the their defense and counterclaim of inequitable conduct in their Amended Answer and Counterclaim. Additionally, to date, defendants have not moved this Court for permission to add these contentions to their affirmative defense and counterclaim of inequitable conduct. This Court is not taking a position on any motion that may be brought by defendants to further amend their answer and add these other contentions of inequitable conduct.

Plaintiffs filed and served their Motion for Rule 11 Sanctions on February 28, 2003, the last day for nondispositive motions. The hearing was originally scheduled for March 17, 2003, and was subsequently heard on March 20, 2003.

## II. DISCUSSION

### A. The Purpose of Rule 11's Safe Harbor Provision Has Been Satisfied Under Rule 11

Before reaching the merits of plaintiffs' motion, this Court must first address defendants' argument that plaintiffs' motion should be denied because of their failure to follow the "safe harbor" provisions set forth in of Fed. R. Civ. P. 11(c)(1)(A).

Rule 11(c) governs the sanctions process, which reads in relevant part:

> (1) How Initiated
>
> (A) By Motion. A motion for sanctions under this rule shall be made separately from other motions or requests and shall describe the specific conduct alleged to violate subdivision (b). It shall be served as provided in Rule 5, but shall not be filed with or presented to the court unless, within 21 days after service of the motion (or such other period as the court may prescribe), the challenged paper, claim, defense, contention, allegation, or denial is not withdrawn or appropriately corrected.

Under Rule 11, "a party will not be subject to sanctions on the basis of another party's motion unless, after receiving the motion, it refuses to withdraw that position or to acknowledge candidly that it does not currently have evidence to support a specified allegation." Fed. R. Civ. P. 11, Advisory Committee Notes Rule 11 (b) and (c) (1993 Amend.). This period of time has been described as a "safe harbor."

Substantial sanctions are authorized under Rule 11. As a result, adequate time is required for the party to correct its improper conduct, before such serious sanctions

would be warranted. See Hockley by Hockley v. Shan Enterprises Ltd. Partnership, 19 F. Supp.2d 235, 240 (D.N.J. 1998) ("The express purpose of [the 1993 Amendments] to the rule was to prevent abuses of Rule 11 sanctions by providing parties a 'safe harbor' within which they will not be subject to sanctions unless they refuse to withdraw offending papers filed with the court"). Put another way, a party that does not willingly undertake corrective conduct within the "safe harbor" period may not be heard to say that it was incapable of acting within the time required.

Plaintiffs filed and served their Motion for Rule 11 sanctions on February 28, 2003. The hearing was originally scheduled for March 17, 2003, and was rescheduled to be heard on March 20, 2003, to accommodate the schedules of defendants' attorneys. Upon receipt of defendants' response to their the Rule 11 motion, which raised plaintiffs' failure to comply with Rule 11's safe harbor provision, plaintiffs sent a letter to the Court on March 17, 2003, acknowledging that they had improperly filed and served their Rule 11 motion by failing to allow for the 21-day "safe harbor" provision under Rule 11. Plaintiffs asked the Court for permission to treat their motion as a dispositive motion, and to give defendants twenty-one days to withdraw the inequitable conduct claim as required by Rule 11.

During a telephone conference between the parties and the Court, counsel for defendants informed the Court that they did not intend to withdraw their inequitable conduct claim. Based upon this representation, the Court denied plaintiffs' request for a continuance of the motion and the hearing went forward as scheduled on March 20, 2003. At the hearing, defendants' counsel again reaffirmed to the Court that his clients

had no intention of withdrawing the inequitable conduct claim, and in fact, informed the Court that defendants were moving for summary judgment on their claim of inequitable conduct.[7]

The purpose of the "safe harbor" provision set forth in Rule 11 is to give parties the opportunity to determine if they want to withdraw a claim and thereby avoid sanctions. Defendants have communicated to the Court that they do not intend to withdraw their inequitable conduct. This position is further supported by defendants' inclusion of the claim in their motion for summary judgment. While this Court does not countenance plaintiffs' failure to follow the mandates of Rule 11(c)(1)(A), in light of defendants' decision to proceed with the prosecution of their inequitable conduct claim, the purpose of the "safe harbor" provision has been satisfied. Dismissal of plaintiffs' motion on the basis of defendants' failure to comply with Fed. R. Civ. P. 11(c)(1)(A) is denied. See Zuk v. Eastern Pennsylvania Psychiatric Institute of the Medical College of Pennsylvania, 103 F.3d 294, 299, n. 3 (3rd Cir. 1996) (court refused to address appellant's contention that he had not been given full benefit of Rule 11's 21-safe harbor, when he acknowledged he would not have withdrawn the pleading had he been given the full 21-day period.)

### B. Defendants' Attorneys Pre-Filing Investigation Satisfies the Requirements of Rule 11

The evidence presented by the parties in connection with this motion, does not demonstrate that defendants' attorneys failed to reasonably investigate the facts before

---

[7] On March 4, 2003, defendants served upon plaintiffs a motion for summary judgment.

bringing a claim for inequitable conduct. Therefore, plaintiffs' motion for Rule 11 sanctions is denied.

Rule 11 requires that every pleading must be signed by at least one attorney of record, or by the party. Fed. R. Civ. P. 11(a). By signing such a pleading, the attorney or party is "certifying that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances . . . that the allegations and other factual contentions have evidentiary support or, if specifically so identified, are likely to have evidentiary support after a reasonable opportunity for further investigation or discovery." See Fed. R. Civ. P. 11(b)(3); Van Berkel v. Fox Farm and Road Machinery, 581 F. Supp. 1248, 1250 (D. Minn. 1984) ("Rule 11 of the Federal Rules of Civil Procedure provides that the signature of an attorney to a pleading is a certification that he has made reasonable inquiry upon which to base a belief that the allegations of it are well grounded in fact and law and provides for sanctions for its violation."); Saturn Systems, Inc. v. Saturn Corp., 659 F. Supp. 868, 870 (D. Minn. 1987) (Rule 11 imposes a duty on the signing attorney to inquire into the governing law as well as the pertinent facts to insure that both support the position taken in the paper signed by the attorney.)

"When determining whether a Rule 11 violation has occurred, a court 'must apply an objective reasonableness standard,' (citations omitted)) to determine whether a pleading was frivolous, groundless, or advanced for an improper purpose." Pulaski County Republican Comm. v. Pulaski Board of Election Comm'r, 956 F.2d 172, 173 (8th Cir. 1992); see also Hartman v. Hallmark Cards, Inc., 833 F.2d 117, 124 (8th Cir. 1987) (same); Glass v. IDS Financial Services, Inc., 137 F.R.D. 262, 263 (D. Minn. 1991)

(same). The district court "must determine whether a reasonable and competent attorney would believe in the merit of an argument." Coonts v. Potts, 316 F.3d 745, 753 (8th Cir. 2003)(citing Miller v. Bittner, 985 F.2d 935, 939 (8th Cir. 1993)).

In gauging the reasonableness of an attorney's pre-filing inquiry into the factual bases of the claim, courts have suggested that a number of factors be examined including: "'whether the signer of the documents had sufficient time for investigation; the extent to which the attorney had to rely on his or her client for the factual foundation underlying the pleading, motion or other paper; whether the case was accepted from another attorney; the complexity of the facts and attorney's ability to do a sufficient pre-filing investigation; and whether discovery would have been beneficial to the development of the underlying facts.'" Divane v. Krull Elec. Co., Inc., 200 F.3d 1020, 1028 (7th Cir. 1999) (quoting Brown v. Federation of State Medical Bds. of the United States, 830 F.2d 1429, 1435 (7th Cir. 1987)); Mary Ann Pensiero Inc. v. Lingle, 847 F.2d 90, 95 (3rd Cir. 1988); see also Fed. R. Civ. P. 11 Advisory Committee Notes (1983 Amend.) (suggesting four factors for consideration on the reasonableness of an attorney's pre-filing inquiry, including amount of time available to signer for conducting investigation, necessity of relying on client for underlying factual information, and the plausibility of the legal position advanced).

Plaintiffs' motion for Rule 11 sanctions centers around the pleading of the inequitable conduct affirmative defense and counterclaim by defendants. The concept of inequitable conduct is rooted in the uncompromising duty of candor that applicants owe to the PTO. See Schneider (Europe) AG v. SciMed Life Systems, Inc., 852 F.

Supp. 813, 855 (D. Minn. 1994) (citing Precision Co. v. Automotive Co., 324 U.S. 806, 818 (1945)). A patent is rendered unenforceable when the applicant fails to live up to the duty of candor toward the PTO. Id.

For a patent to be held unenforceable by reason of inequitable conduct, the party asserting unenforceability must show that the information submitted or not disclosed to the PTO was material and that the applicant intended to deceive the PTO. Medical Graphics Corp. v. Sensormedics Corp., (Civ. No. 3-94-525) 1995 WL 523636, at *11 (D. Minn. June 2, 1995) (citations omitted); see also PerSeptive Biosystems, Inc. v. Pharmacia Biotech, Inc., 225 F.3d 1315, 1318 (Fed. Cir. 2000). Thus, the doctrine of inequitable conduct involves a two-step analysis.[8] First, a trial court "'must discern whether the withheld references satisfy a threshold level of materiality.'" Schneider (Europe) AG, 852 F. Supp. at 855 (quoting Halliburton Co. v. Schlumberger Tech. Corp., 925 F.2d 1435, 1439 (Fed. Cir. 1991)); PerSeptive Biosystems, Inc., 225 F.3d at 1318. Information is material if there is a "'substantial likelihood that a reasonable examiner would consider it important in deciding whether to allow the application to issue as a patent.'" Schneider (Europe) AG, 852 F. Supp. at 855 (citations omitted). However, material information does not have to be presented to an examiner if the reference is cumulative or less material than references before the examiner. Id.

---

[8] Plaintiffs contend that analysis of the inequitable conduct doctrine involves a three steps: 1) proof that that the prior art was material; 2) proof that the applicant had knowledge of the prior art and its materiality; and 3) proof that the applicant intended to mislead the PTO. See Elk Corp. of Dallas v. GAF Building Materials Corp., 168 F. 3d 28, 30 (Fed. Cir. 1999). This Court finds that the 2-prong and 3-prong tests are virtually the same because the concept of "intent to mislead" subsumes the topic of knowledge. Therefore, we apply the 2-step test.

Second, the court must "determine whether the applicant's conduct satisfies a threshold showing of intent to mislead." Id. (citations omitted); see also, PerSeptive Biosystems, Inc., 225 F.3d at 1319. The intent prong of an inequitable conduct claim does not need to be proven by direct evidence; it is most often proven by a showing of acts, the natural consequence of which are presumably intended by the actor. Semiconductor Energy Laboratory Co., Ltd. v. Samsung Electronics Co., Ltd., 204 F.3d 1368, 1374-75 (Fed. Cir. 2000) (citations omitted). The intent element "must be generally inferred from the facts and circumstances surrounding the applicant's overall conduct." Id. (citations omitted) "'[S]moking gun' evidence is not required to establish an intent to deceive." Paragon Podiatry Laboratory, Inc. v. KLM Laboratories, Inc., 984 F.2d 1182, 1189 (Fed. Cir. 1993) (quoting Merck & Co. v. Danbury Pharmacal, Inc., 873 F.2d 1418, 1422 (Fed. Cir. 1989)("'Intent need not, and barely can, be proven by direct evidence.'")).

Plaintiffs allege that defendants did not make the necessary factual inquiry into either the materiality or intent prongs of a claim for inequitable conduct, and therefore, defendants did not have a reasonable basis to assert the claim. Specifically, plaintiffs rely on the Rule 30(b)(6) Deposition of Burns, the President and General Counsel of Danville Materials, Inc., to prove that defendants had no knowledge before interposing their Amended Answer and Counterclaim regarding the following:

- whether the prior art cited by them disclosed or had elements of the claims made in the patents-in-suit in their Eighth Defense or Counterclaim,
- whether the prior art was cumulative to other references submitted to the PTO, or

- whether Hasel had knowledge of the references allegedly withheld from the PTO during prosecution, much less an intent to withhold these references from the PTO,

given Burns had no knowledge of this information at the time of his deposition on July 16, 2002.

Plaintiffs' argument is rejected for two reasons. First, the proper focus of Rule 11 is on the conduct of the attorneys representing a party during litigation and not the party. See Lemelson v. United States, 14 Cl. Ct. 318, 321, 6 U.S.P.Q.2d 1657 (1988) (citations omitted); see also, Fed. R. Civ. P. Advisory Committee Notes, Rule 11(b) and (c) (1993 Amend.)("The person signing, filing, submitting, or advocating a document has the nondelegable responsibility to the court, and in most situations is the person to be sanctioned for a violation.") The testimony of Burns only bears on his knowledge – it does not establish what information litigation counsel knew at the time they signed the pleading asserting the defense or counterclaim.[9] As such, the Court finds that the deposition testimony of Burns does not establish whether litigation counsel did or did not conduct a reasonable pre-filing investigation.

Second, plaintiffs' argument presumes that defendants' counsel must have adequate factual support for both prongs of the claim of inequitable conduct – materiality and intent to deceive – before they can assert the claim. In this regard, while

[9] When plaintiff's' counsel asked Burns "what prior art did Hasel have knowledge of yet intentionally failed to disclose to the patent office," Burns testified that the various products listed in the affirmative defense and counterclaim (Healthco, Degulfill, Charisma), were extensively advertised in numerous dental publications and journals and that Healthco was the largest distributors of such products. Burns believed that Hasel, given his background and work, would be reviewing these dental journals and would therefore, have knowledge of these products. Presumably, defendants' counsel were aware of this information from discussions with their client at the time they moved to add the claim of inequitable conduct to defendants' answer.

plaintiffs do not deny their failure to disclose the prior art listed in defendants' Eighth Defense and Counterclaim, they contest whether the prior art is material or whether Hasel had the knowledge of it or the intent to deceive the PTO about its existence. Plaintiffs contend that if defendants had just asked Hasel prior to making the amendment if he knew about the prior art listed by defendants in their Counterclaim that they would have discovered that he had no prior knowledge or intent. But this mischaracterizes this Court's role in deciding the motion for Rule 11 sanctions. This Court's role is not to determine whether defendants can ultimately prove their claim, nor to judge the veracity of Hasel's testimony. See Mary Ann Pensiero Inc., 847 F.2d at 96. Rather, our function is to determine if counsel had an adequate factual basis to make the assertion at near-inception of the case.

This Court finds that defendants' attorneys did have an adequate factual basis to allege inequitable conduct in their Amended Answer and Counterclaim. First, they only acted to amend their clients Answer after receiving plaintiffs' Rule 26(a)(1) initial disclosures, and after having investigated the file histories of the patents-in-suit produced by plaintiffs in connection with these disclosures. This review uncovered that Hasel had represented to the PTO that there were no dental composites prior to the invention covered in the '379 patent that were applied directly to a tooth through a syringe and used to fill a cavity.

Second, based upon defendants' knowledge that there were flowable dental composites that could be applied to a tooth that pre-dated the application for the '379 patent, and Hasel's claim to be a leader in the field of composite dentistry, defendants'

counsel concluded they had a reasonable basis to amend their clients' Answer and add the defense and counterclaim of inequitable conduct. In addition, counsel for defendants knew from review of the file histories that plaintiffs' counsel had withdrawn from further representation of Hasel in connection with his pending patent applications for reasons that included that his "continued employment is likely to result in a violation of a Disciplinary Rule."

This Court notes that when necessary evidence is largely in the opposing party's possession (i.e., Hasel is not likely to admit he knew about the alleged prior art or that he intentionally withheld information from the PTO), proof of such activity takes time and may be developed though discovery. See Mary Ann Pensiero Inc., 847 F.2d at 95; Vista Manufacturing, Inc. v. Trac-4, 131 F.R.D 134, 143 (N.D. Ind. 1990) ("when necessary evidence is in the opposing party's exclusive possession, counsel may file a complaint based on reasonable inferences from whatever evidence is available, notwithstanding Rule 11."). Moreover, Fed. R. Civ. P. 11(b)(3) allows a party to make allegations upon information and belief, which they "believe are likely to have evidentiary support after a reasonable opportunity for further investigation or discovery."[10] Rule 11 does not bar the courthouse door to people who have some support for a complaint but who need discovery to prove their case. Vista Manufacturing, Inc.,131 F.R.D at 143 (citations omitted).

---

10 In this case, discovery has revealed letters to Hasel regarding the '379 patent from companies that informed Hasel of prior art that allegedly makes the '379 patent invalid. The prior art in these letters was allegedly never provided to the PTO during the prosecution of the '527 or '567 patents.

Although the evidence counsel for defendants had garnered prior to the filing of the Amended Answer may not be sufficient to win at trial, survive summary judgment or a motion to dismiss, it does show that defendants' counsel had a reasonable factual basis to raise the inequitable conduct doctrine. See Vista Manufacturing, Inc., 131 F.R.D. at 138 (citing Hartman v. Hallmark Cards, Inc., 833 F.2d 117, 124 (8th Cir. 1987)) (finding that a party is not required under Rule 11 to have enough information before filing a claim to survive summary judgment). In addition, based on the short period of time between Rule 26(a)(1)(B) disclosures by plaintiffs and the last day to amend pleadings under the Scheduling Order,[11] defendants' counsel's reliance upon the file histories produced by plaintiffs of Hasel's statements to the PTO regarding the state of the dental composite industry and undisclosed prior art, meets the pre-filing inquiry requirements of Rule 11. See Divane v. Krull Elec. Co., Inc., 200 F.3d 1020, 1028 (7th Cir. 1999) (citation omitted) (finding that in order to measure the reasonableness of a party's inquiry into the factual bases of its claims a court is to look at numerous factors including whether the signing attorney had sufficient time for an investigation).

**C. Plaintiffs' Motion for Rule 11 Sanctions is Not Timely.**

Plaintiffs could have contested defendants' claim of inequitable conduct as early as April 30, 2002, when defendants moved to amend their Answer and Counterclaim, under Fed. R. Civ. P. 15. Under Rule 15, a party may not be able to supplement their pleadings if the proposed amendment is frivolous. Hiduchenko v. Minneapolis Medical

---

[11] Plaintiffs' Rule 26(a)(1)(B) disclosures were made on March 8, 2002, and the last day to amend pleadings was May 1, 2002.

and Diagnostic Center, 467 F. Supp. 103, 105 (D. Minn. 1979) (citing 6 Wright & Miller, Federal Practice & Procedure, § 1487; Norbeck v. Davenport Comm. School Dist., 545 F.2d 63 (8th Cir. 1976)). Instead, defendants decided to stipulate to the amendment on May 14, 2002. Then despite the deposition testimony of Burns on July 16, 2002, which plaintiffs claim demonstrates that no pre-filing inquiry was undertaken concerning defendants' claim of inequitable conduct, plaintiffs chose to delay bringing their motion for Rule 11 sanctions until February 28, 2003, the last day for nondispositive motions. "Ordinarily the [Rule 11] motion should be served promptly after the inappropriate paper is filed, and, if delayed too long, may be viewed as untimely." Fed. R. Civ. P. 11, Advisory Committee Notes Rule 11 (b) and (c) (1993 Amend.); see also Hutchinson v. Pfeil, 208 F.3d 1180, 1183-84 (10th Cir. 2000) (motion for Rule 11 sanctions subsequent to summary judgment was found untimely). Plaintiffs had more than adequate time to bring a motion for Rule 11 sanctions, but nonetheless waited to bring their motion until after their motion for partial summary judgment was denied (in part on the basis of defendants' argument that the patents-in-suit were invalid due to plaintiffs' inequitable conduct) and shortly before the case was to be deemed to be trial ready.[12] Therefore, this Court also finds that the plaintiffs' Motion for Rule 11 Sanctions is untimely.

[12] Per the Pretrial Order dated February 26, 2002, and subsequent Order dated March 10, 2003, the case was scheduled to be ready for trial on May 1, 2003

**THEREFORE IT IS HEREBY ORDERED THAT** plaintiffs' Motion for Rule 11 Sanctions [Docket No. 33] is **DENIED**.

Dated: April 2, 2003

JANIE S. MAYERON
United States Magistrate Judge